ATLANTIC CONSTRUCTION COMPANY v. CITY OF RALEIGH.

(Filed 4 May, 1949.)

**1. Municipal Corporations § 8b (2)—**

A city may not compel owners of property outside its limits to avail themselves of water and sewerage services, and on the other hand the city may prescribe such rules and regulations and impose such fees as in its discretion are reasonable and proper as conditions precedent to the right of those living outside its limits to connect with its sewer and water mains, the matter being entirely contractual. G.S. 160-249.

**2. Same—**

An ordinance imposing a connection fee on residents outside the city who avail themselves of the privilege of using the city's sewerage system after the effective date of the ordinance will not be held invalid as discriminatory because no fee was imposed on those who had made such connections prior thereto.

**3. Same—**

A fee imposed upon residents outside the city limits for the privilege of connecting with the city's sewerage system is not a tax.

**4. Same—**

Plaintiff's predecessor in title had executed a contract with the municipality under which the owners of land in the subdivision were to be permitted to connect with the municipality's water and sewer mains "in accordance with the laws, ordinances, rules and regulations" of the municipality. *Held:* The contract does not preclude the municipality from charging such owners a connection fee under an ordinance later enacted imposing such fee on all persons living outside its limits who avail themselves of the municipal facilities.

APPEAL from *Hamilton, Special Judge,* at January Term, 1949, of WAKE.

This is an action to restrain the City of Raleigh from collecting any fees or charges, by virtue of the provisions of an ordinance duly adopted by the governing body of said city, on 18 November, 1947, which ordinance reads as follows: "Every property owner or occupant desiring to make a lateral connection with a sewer main lying outside of the corporate limits of the City, connecting with or emptying into the mains of the City sewerage system, shall pay to the City of Raleigh a fee of $100 for

each such connection before the connection is made." And the plaintiff also seeks to recover the fees heretofore paid to the City of Raleigh, pursuant to the terms of the ordinance, which fees, it is alleged, were paid under protest.

R. A. Bashford and J. C. Bashford entered into a contract, on 12 March, 1947, with the City of Raleigh, whereby the Bashfords, owners of a parcel of land outside the City limits of Raleigh, subdivided their land into building lots, and at their cost and expense laid water and sewer mains according to plans and maps submitted to and approved by the officials of the City of Raleigh, and connected the same with the water and sewer mains of the defendant City, as authorized by said contract.

The pertinent parts of the contract involved in this action are as follows: "That the connections by consumers of water in said subdivision or development with the pipe lines, water mains or sewer mains to be laid under this contract and agreement, shall be in accordance with the laws, ordinances, rules and regulations of the City of Raleigh, and its Department of Public Works, and the use of water through said pipe lines or water mains shall be in accordance with the said laws, ordinances, rules and regulations. City shall have supervision and control over said mains, pipe lines, laterals, taps and connections for the purpose of making any and all necessary inspections, reading of meters, and turning the water on or off. The water rents charged by City to the consumers of water through said water mains or pipe lines shall be the same as those charged all other consumers residing outside the corporate limits of the City, and City shall collect all water rents from consumers connected with said mains, pipe lines or laterals, and shall retain and have the same as its own."

The development or subdivision is known as Sunset Hills Extended. The plaintiff purchased from the Bashfords approximately forty-five building lots in said subdivision, on 18 April, 1947, for the purpose of building residences thereon, and has constructed a number of residences in the development; and since the adoption of the above ordinance the plaintiff has paid the defendant for nine sewer connections at $100.00 each, some of which payments were made under verbal protest.

It is alleged the contract referred to herein between the Bashfords and the defendant, runs with the land, and the plaintiff being a successor in title to R. A. and J. C. Bashford, is entitled to all the benefits, terms and conditions of the contract, and that the contract does not authorize the City of Raleigh to collect any fees for connections with the private sewerage system constructed and laid by the Bashfords.

His Honor heard this cause on an Agreed Statement of Facts, the parties having waived a trial by jury, and stipulated that the presiding

Judge should make his conclusions of law and enter judgment accordingly.

The court held the plaintiff is not entitled to injunctive relief nor to a refund on account of any payments made pursuant to the provisions of the ordinance referred to herein, and entered judgment in accordance therewith.

The plaintiff appeals and assigns error.

*Brassfield & Maupin and J. Russell Nipper for plaintiff.*
*Wm. C. Lassiter and James H. Walker for defendant.*

DENNY, J.   The plaintiff does not challenge the authority of the City of Raleigh, acting through its governing board, to fix a different schedule of rates for services supplied outside of the corporate limits of the City from that fixed for such services rendered within the corporate limits. G.S. 160-249 and G.S. 160-256. Moreover, the plaintiff concedes in its brief that ordinarily municipalities may impose reasonable conditions and regulations in regard to making sewer connections and may fix and determine the fees and charges therefor, but it contends the regulations, as well as the charges for such connections, must be reasonable.

The validity of the ordinance set out herein is challenged on the following grounds:

1. That the sewer connection charge, or fee, imposed in the ordinance is, in effect and in fact, a revenue measure imposing an excise tax, and bears no relation to fees or charges imposed to defray the expense incident to the inspection of sewer connections. An inspection fee in addition to the charge or fee fixed in the ordinance, is charged and collected under and by virtue of Chapter XX, Sec. 64, of the Raleigh City Code.

2. That the ordinance is discriminatory for that: (a) No charge or fee is made by the defendant City of Raleigh to owners or occupants of property lying within the corporate limits of the City for sewer connections; and (b) owners or occupants of property lying outside of the City of Raleigh and who made sewer connections prior to 18 November, 1947, were not and are not required to pay any fee or charge for sewer connections and for the use of the sewerage system.

3. That the fees and charges provided for by said ordinance are not on a basis of equality, a flat charge or fee of $100.00 being made for each lateral connection, regardless of the number of outlets, the size of pipes, or the number of persons or families served.

4. That the fee provided for by said ordinance is unreasonable and unfair, since the defendant City has neither paid out any money nor incurred any expense in making said sewer connections.

5. That the connection fee provided for by the ordinance, is in violation of the contract between the Bashfords and the City of Raleigh, which contract is pleaded as a bar of the defendant's right to make any charges or collect any fees for connections with the private sewerage system constructed by the Bashfords.

A careful consideration of this record leads us to the conclusion that the defendant is free to require such sewer connection charges to consumers of water, residing in the development known as Sunset Hills Extended, as it may deem just and reasonable, unless the contract between the Bashfords and the City of Raleigh prohibits the City from charging a sewer connection fee.

The provision in the contract upon which the plaintiff relies, as a bar to the defendant's right to charge a connection fee, is as follows: "That the connection of consumers . . . with sewer mains to be laid under this contract . . . shall be in accordance with the laws, ordinances, rules and regulations of the City of Raleigh, and its Department of Public Works . . ." If it be conceded this provision is directed solely to the manner in which the connections are to be made and not to include conditions which might be imposed, we do not think the provision places any limitation upon the power of the City to enact an ordinance requiring the payment of a sewer connection fee by one residing in Sunset Hills Extended. But we think the provision is sufficient to require those requesting a sewer connection pursuant thereto, to pay such connection fee as may be fixed "in accordance with the laws, ordinances, rules and regulations of the City of Raleigh." It seems clear to us the provision was not inserted merely to insure proper installation. For it is further provided in the same paragraph of the contract that the City of Raleigh is also given "supervision and control over said mains, pipe lines, laterals, taps and connections for the purpose of making any and all necessary inspections," etc.

Furthermore, municipalities are expressly authorized by statute, G.S. 160-240, to require all owners of improved property which may be located upon or near any line of a sewerage system to connect with such sewer all water-closets, bathtubs, lavatories, sinks, or drains upon their respective properties or premises, so that their contents may be made to empty into such sewer, and may *fix charges for such connections.*

Obviously the municipality is not authorized by the statute, to compel owners of improved property located outside the city, but which may be located upon or near one of its sewer lines or a line which empties into the City's sewerage system, to connect with the sewer line. But since it is optional with a city as to whether or not it will furnish water to residents outside its corporate limits and permit such residents to connect their sewer facilities with the sewerage system of the city, or with any

other sewerage system which connects with the city system, it may fix the terms upon which the service may be rendered and its facilities used. G.S. 160-255; G.S. 160-256; *Kennerly v. Dallas,* 215 N.C. 532, 2 S.E. 2d 538; *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; *George v. City of Asheville* (4 C.C.A.) 80 Fed. 2d 50.

The North Carolina Utilities Commission has no jurisdiction to fix or supervise the fees and charges to be made by a municipality for connections with a city sewerage system, either within or without its corporate limits. G.S. 62-30 (5); G.S. 62-122 (3). Therefore, a city is free to establish by contract or by ordinance such fees and charges for services rendered to residents outside its corporate limits as it may deem reasonable and proper. G.S. 160-240; G.S. 160-249; G.S. 160-284.

The status of a municipal corporation that extends the services of its public utilities beyond its corporate limits, is quite different from that of a public service corporation which holds a franchise from the State and whose rates are fixed by the North Carolina Utilities Commission, G.S. 62-27.

The relationship existing between the plaintiff and the defendant is contractual, whether it is based on the Bashford contract or the ordinances and rules and regulations adopted by the governing board of the City of Raleigh. The defendant has no legal right to compel residents living outside its corporate limits to avail themselves of the services which may be offered by its public utilities. On the other hand, in the absence of a contract providing otherwise, such residents are not in position to compel the City to make such services available to them. *Childs v. City of Columbia,* 87 S.C. 566, 70 S.E. 296; *Board v. Sup'vrs. of Henrico County v. City of Richmond,* 162 Va. 14, 172 S.E. 354; *City of Phoenix v. Kasum,* 54 Ariz. 470, 97 Pac. 2d 210.

Likewise, the contention that the service connection fee fixed in the ordinance is a tax, is untenable. *City of Lexington v. Jones,* 289 Ky. 719, 160 S.W. 2d 19. We think the contract and ordinance constitute a tendered use of the sewerage system of the City of Raleigh to residents in Sunset Hills Extended, according to the terms of the contract. And in the absence of any constitutional or statutory restriction, the rates and fees that may be charged to such residents in connection with the use of its public utilities, are matters that may be determined by its governing body in its sound discretion.

The plaintiff in its brief also contends that the fee charged is not necessary in order to meet the payment of the defendant's bonded indebtedness or the repair, maintenance and operation of its water and sewer system, as authorized in G.S. 160-256. In our opinion the plaintiff is not in a position to challenge the validity of the fees or rates established by

the City pursuant to the provisions of this statute, since the property in question is located outside the city limits of the City of Raleigh.

In view of the conclusion we have reached, the plaintiff is not entitled to an order restraining the defendant from collecting further sewer connection fees, pursuant to the provisions of the ordinance it challenges, nor to a refund of the fees heretofore paid in accordance with its requirements.

The judgment of the court below will be upheld.

Affirmed.