UNITED STATES of America, Plaintiff,

v.

John E.A. PHILLIPS, Robert Tucker, MCA Music, MCA Records, Inc., Doubleday & Company, Inc., American Society of Composers, Authors and Publishers and International Creative Management, Inc., Defendants.

No. 87 Civ. 7646 (RWS).

United States District Court, S.D. New York.

June 14, 1989.

Benito Romano, U.S. Atty., S.D.N.Y., New York City, for plaintiff; Allan N. Taffet, Asst. U.S. Atty., of counsel.

Lipman & Hashmall, New York City, for defendant John E.A. Phillips; David Hashmall, of counsel.

Dornbush Mensch Mandelstam & Silverman, New York City, for defendant Robert T. Tucker; Karl Savryn, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff United States of America ("the Government") moves for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant Robert Tucker ("Tucker") cross-moves for partial summary judgment as to his first counterclaim pursuant to Fed.R.Civ.P. 56. For the reasons set forth below plaintiff's motion for summary judgment is granted.

*The Parties*

Robert Tucker is an attorney admitted to the New York Bar and a partner in the law firm of Baker & McKenzie. He was business manager and attorney to defendant Phillips.

Defendant John E.A. Phillips ("Phillips") is a songwriter. He has done business individually as Honest John and as a member of the singing group The Mamas and the Papas.

The other parties in this action are the stakeholder defendants—MCA Records, American Society of Composers, Authors and Publishers ("ASCAP") and International Creative Management ("ICM")—who tender royalty payments to Phillips, and Tucker, an individual allegedly having a claim or interest in certain royalty payments provided to Phillips.

*Prior Proceedings*

The Government filed the complaint in this action on May 8, 1987 to reduce to judgment the outstanding assessments of federal income tax liabilities against Phillips and to enforce and foreclose the outstanding tax liens upon specific assets of Phillips. Tucker, by answer on July 31, 1987, brought two counterclaims against the Government.

The Government moved for summary judgment on December 28, 1988. Tucker cross-moved for summary judgment on February 14, 1989. The motions were considered on affidavits, argued and fully submitted on March 3, 1989. The facts set forth below are uncontested except as noted.

*Facts*

In May 1981, the Internal Revenue Service ("IRS") made the first of several assessments for outstanding tax liabilities against Phillips. These assessments covered tax years 1977, 1979, 1980, 1983, 1984, and 1985. The total amount assessed by the IRS, with accumulated interest and penalties, is presently in excess of five hundred thousand dollars.

The IRS also separately filed federal tax liens in the counties where they believed Phillips resided for each of the years taxes had been assessed. In March 1982, the IRS filed federal tax liens in Union County, New Jersey, covering outstanding tax assessments for tax years 1977, 1979, and 1980. Notices of federal tax liens for tax liabilities covering tax years 1977, 1979, and 1980 were also filed in Essex County, New Jersey on April 20, 1983, and in New York County, New York on June 11, 1985.

According to Tucker the federal tax liens filed in the State of New Jersey in March 1982 and April 20, 1983 were not filed in the counties where Phillips resided for each of these years taxes had been assessed.

During the period from August 1981 through December, 1983, Tucker loaned Phillips $230,814.00 from his personal funds. According to Tucker, Phillips was then experiencing severe economic difficulties because of the burdens and expenses caused by his indictment in August 1980 arising from his cocaine addiction, and subsequent drug rehabilitation period. Tucker assisted Phillips financially through loans by checks drawn on his personal checking and money market-type accounts.

In 1983 Tucker as guarantor paid approximately $70,000 to a creditor of Phillips out of personal funds. In addition, the law firm, Baker & McKenzie, advanced a total of $20,776.20 on behalf of Phillips. Tucker reimbursed the firm for this amount.

According to Tucker, when he made loans to Phillips, Phillips would at various times execute promissory notes payable to Tucker. These promissory notes totaled $230,814.00. Phillips made some small repayments to Tucker and by April 1, 1985 Phillips owed Tucker a total of $249,090.20, not including any interest. In order to deal with Phillips' indebtedness to him, Phillips and Tucker executed an agreement (the "Agreement") on April 1, 1985, whereby Phillips agreed to assign to Tucker all of Phillips' rights, title and interest in:

(i) certain song writer royalty payments from MCA Music and related companies with respect to musical compositions written by Phillips;

(ii) certain publishing royalty payments from MCA with respect to music copyrights partially or wholly owned by Phillips doing business as Honest John Music;

(iii) certain recording royalties from MCA Records with respect to recordings by Phillips and for the Mamas and the Papas; and

(iv) all payments and royalties from Doubleday and Company with respect to a book authored by Phillips on his life.

Under the terms of the Agreement, Tucker agreed to extinguish "all obli-

gations of Phillips" owed to Tucker relating to past indebtedness incurred by Phillips, in exchange for Phillips' assignment to Tucker of Phillips' right, title and interest in certain music and publishing royalties. According to Tucker, the assignment was in exchange for, and in consolidation for, the outstanding promissory notes. Upon execution of the Agreement, the promissory notes were returned to Phillips and marked "Paid in Full."

According to Tucker, each of the payors of royalties, including MCA Music, MCA Records, International Creative Management, Inc. and Doubleday & Company, Inc. were given written notice on April 1, 1985 of the assignment of Phillips' royalties, and they were requested to make all future royalty payments directly to Tucker. Tucker received such payments pursuant to the Agreement, but the payments were subsequently suspended pending resolution of the claims made by plaintiff on behalf of the IRS in this action.

In March 1987, the IRS filed tax liens in New York County, New York covering outstanding tax assessments against Phillips for tax years 1983, 1984, and 1985.

*Standard for Summary Judgment*

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *See id.* at 247–48, 106 S.Ct. at 2509–10; *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir.1988). All doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.

1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Enforcement of the Federal Tax Liens*

■ The Government has asserted valid tax liens against Phillips' royalties in accordance with federal law. A lien for taxes arises whenever any person liable to pay any tax neglects or refuses to pay following a demand. 26 U.S.C. § 6321. The tax lien relates back to the date on which the assessment was made, and continues until the tax liability assessed is either satisfied or rendered unenforceable by reason of lapse of time. 26 U.S.C. § 6322. A federal tax lien attaches to all property or rights to property that belong to a taxpayer during the period the lien is in effect. 26 U.S.C. § 6321. Royalties, consisting of an unequivocal promise to pay that is contingent only on the future conduct or performance of a third party, constitute property that may be subject to an IRS's lien and levy. *See Mantovani v. Fast Fuel Corp.*, 494 F.Supp. 72, 77 (S.D.N.Y.1980).

*Purchasers Under 26 U.S.C. § 6323*

■ The Government may enforce these liens because they are superior to Tucker's right to collect Phillips' royalties. Under 26 U.S.C. § 6323(a), federal tax liens filed by the Government are not "valid as against any purchaser ... until notice thereof ... has been filed by the secretary or delegate." Thus, a party meeting the definition of "purchaser" has a superior right in property subject to any federal tax lien filed after the date upon which that party became a *bona fide* purchaser.

■ Section 6323(h)(6) of the IRS Code defines the term "purchaser," in pertinent part, as:

a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.

In a federal tax context, the requirement of adequate and full consideration is a matter of federal rather than state law and must be strictly applied. *See Continental Oil Co. v. United States,* 326 F.Supp. 266, 270–71 (S.D.N.Y.1971).

*Consideration for the Royalties Agreement*

■ Under the Uniform Commercial Code, adopted in New York, a written statement that a certain sum of money is due another followed by the signature of the maker of the statement is a promissory note. Moreover, the acknowledgement of both the amount of the indebtedness and that it is due implies a promise to pay on demand. N.Y. U.C.C. §§ 3–104; 3–108. *See generally Hegeman v. Moon,* 131 N.Y. 462, 30 N.E. 487 (1892). That promise to pay is legally enforceable. N.Y. U.C.C. §§ 3–104; 3–108; 3–122(1)(b). *See generally Environics, Inc. v. Pratt,* 50 A.D.2d 552, 553, 376 N.Y.S.2d 510, 511, 50 (1st Dept. 1975); *National Commercial Bank Trust Co. v. Bart Boat Co.,* 41 A.D.2d 159, 161, 341 N.Y.S.2d 347, 349 (3d Dept. 1973); 41 N.Y. Jur. Negotiable Instruments § 20.

Tucker's loans to Phillips provided the consideration supporting the issuance of the various promissory notes executed by Phillips in 1982 and 1983. By the time of the Agreement, Tucker had demanded immediate payment of the indebtedness. Thus payment of the notes became Phillips' legal duty.

In assigning the royalties to Tucker as fulfillment of the debts reflected by the Promissory Notes, Phillips attempted to furnish payment for moneys he already legally owed. However, performance of a pre-existing legal duty is no consideration for a separate instrument executed by the promisee to whom such obligation is owed. *See* 41 N.Y. Jur., Negotiable Instruments § 182; *Restatement, Second,* Contracts § 73; 1 Williston on Contracts § 120 ("Since a debtor incurs no legal detriment by paying part or all of what he owes, and a creditor obtains no legal benefit in receiving it, such a payment if made at the place where the debt is due in the medium of payment which was due, and at or after the maturity of the debt, is not sufficient consideration for any promise."). *Cf. Manufacturer's Hanover Overseas Capital Corp. v. Southwire Co.,* 589 F.Supp. 214, 219–20 (S.D.N.Y.1984) (no consideration exists where debtor did nothing more than "simply give the creditor that which was already due").

Although Tucker's loans were valid consideration for the promissory notes, for the royalties agreement, Tucker received nothing more than that to which he was already legally entitled: payment on past due legal instruments. That past consideration does not separately support the April 1, 1985 agreement. Two courts in the Third Circuit have recognized that agreements founded on past consideration do not render the transferee of property a "purchaser" under Section 6323(a). *United States v. Pavenick,* 197 F.Supp. 257, 259 (D.N.J. 1961) (transfer of stock as repayment for moneys previously loaned by the transferee not adequate and full consideration: "This assignment for past due consideration is inadequate to raise the assignee to the status of purchaser within the statute."); *United States v. Franklin Federal Savings & Loan Association,* 140 F.Supp. 286 (M.D.Pa.1956).[1]

**1.** Tucker relies on *Marteney v. United States,* 245 F.2d 135 (10th Cir.1957). The Tenth Circuit, in *Marteney,* held that a law firm, as the holder of a note executed by the taxpayer, which sold the note back to the taxpayer in exchange for the taxpayer's interest in any judgment obtained by the taxpayer in a libel suit, was a "purchaser" of the tax payer's right in any judgment which might be recovered to the extent of the amount due on the note. *Id.* at 138. The Court, noting that the cancellation of the liability on the note was the equivalent to the payment of money" found that the transaction was for a valuable present consideration. *Id.* at 138–139. However, the decision predates the Tax Lien Act of 1966 which provided the definition of "purchaser" contained in Section 6323(a). Further, the

Since Tucker does not meet the definition of "purchaser" of Phillips' royalties under 26 U.S.C. § 6323, the Government possesses a superior interest in Phillips' royalty payments by virtue of its 1987 liens. Tucker's interest in Phillips' royalties, under 26 U.S.C. § 6323, is subordinate to the Government's interest in Phillips' royalties by virtue of the federal tax liens the Government filed in 1982 and 1987.

*Conclusion*

For the reasons set forth above, the Government's motion for summary judgment against defendant Robert Tucker is granted.

It is so ordered.

authorities cited above, including the Third Circuit decisions, are more persuasive.